UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES,<br><br>        Plaintiff,<br><br>v.<br><br>LEO ANSEN VEZINA,<br><br>        Defendant. | Case No. 4:21-cr-00035-DCN-2<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

On June 2, 2022, the Court held an evidentiary hearing on Defendant Leo Vezina's consolidated Motion to Suppress (Dkts. 60, 82) (the "Motion").[1] Dkt. 118. After argument, the Court DENIED the Motion. *Id.* The purpose of this Memorandum is to provide a reasoned explanation for the Court's ruling.

## II. BACKGROUND

Vezina is one of four codefendants charged for their involvement in trafficking

---

[1] Vezina filed two motions to suppress. The first motion was filed on November 4, 2021, by Vezina's former counsel. Dkt. 60. The second motion was filed on March 9, 2022, after Vezina's current counsel was appointed. Dkt. 82. Per Vezina's unopposed request at the hearing, the Court treats the two motions as consolidated.

Vezina's current counsel was appointed after the reply brief deadline for the first motion expired, so after counsel was appointed, Vezina filed a Motion for Leave to File Reply. Dkt. 69. The Government did not oppose this motion. Accordingly, Vezina filed a reply brief subject to the Court's approval. Dkt. 71. The Court now GRANTS the Motion for Leave to File Reply (Dkt. 69) and accepts as timely Vezina's Reply (Dkt. 71).

methamphetamine. Specifically, Vezina is charged with one count of attempted possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A); 21 U.S.C. § 846; 18 U.S.C. § 2. Dkt. 1. Vezina's codefendants are Brett Groth, Kelly Stedtfeld, and Jacob Martinez.

At approximately 1:49 p.m. on September 29, 2020, Groth was stopped while driving on the interstate in Bannock County by Corporal Tyler Scheierman of the Idaho State Police. Corporal Scheierman observed that Trooper Chad Braswell was nearby and called him to assist. During the traffic stop, the officers discovered approximately five pounds of meth in five different containers, packing materials, a broken meth pipe, a drug ledger, and approximately $4,250 cash. Groth expressed a desire to talk to detectives, so the officers transported him to the Idaho State Police Investigations office in Pocatello.

Once there, Groth talked to Detective Lee Edgley. Groth told Detective Edgley that he had been out of prison for about a month and a half. Soon after his release from prison, Groth began working for a drug trafficking organization. Groth would transport drugs between California and Idaho. Groth also told Detective Edgley that he was to deliver the methamphetamine in his car to three individuals in Southeast Idaho. He had delivered drugs to these same individuals on at least one prior occasion. Groth explained that his drug ledger referenced these individuals as "POC-1," "POC-2," and "Jacob M." The drug ledger also showed the amounts each individual currently owed and the amounts each planned to

MEMORANDUM DECISION AND ORDER - 2

pay at the next transaction.[2]

Groth knew the three individuals as "Kelly," "Leo," and "Jacob Martinez," and Groth provided Detective Edgley with a phone number for each of them. To determine the identities of Kelly and Leo, Detective Edgley searched the phone numbers in databases. Using Kelly's phone number, Detective Edgley identified him as Kelly Stedfeldt. Using Leo's phone number, Detective Edgley identified him as Leo Vezina. Once Detective Edgley had Vezina's full name, he showed DMV and Facebook photos of Vezina to Groth, and Groth confirmed that Vezina was the intended buyer.

Vezina was set to buy one pound of methamphetamine from Groth that day. Stedfeldt was also set to buy one pound of methamphetamine, and Jacob Martinez two pounds of methamphetamine.

Detective Edgley had Groth place recorded phone calls to Vezina, Stedfeldt, and Martinez to set up deliveries. The plan was for law enforcement to conduct a traffic stop of each intended buyer and seize any evidence relating to the planned transactions. The Stedfeldt operation was first.

During the recorded call with Stedfeldt, Groth arranged the delivery to be at the Petco in Chubbuck, Idaho. Stedfeldt told Groth that he would be driving a beat-up Lincoln

---

[2] Sometime during or after this interview, Detective Edgley wrote some notes on the same page of the drug ledger. At the hearing, Vezina challenged the Government's reliance on the drug ledger as evidence to support the subsequent traffic stop and search of Vezina. The Court explained at the hearing that it would give the appropriate weight to the evidence and suggested that the weight was minimal. Indeed, after further review, the Court finds that the drug ledger was insignificant in the totality of the circumstances used by the Government to support the stop and the search. That said, the Court also does not believe the alteration to the drug ledger, which came after Groth explained the drug ledger, in any way negates what information Groth provided about it and the planned drug transactions.

Navigator. After the call, surveilling officers went to the Petco to wait for Stedfeldt. At the arranged time, a 1999 Lincoln Navigator pulled into the parking lot of the Petco. Groth then placed another call to Stedfeldt to move the delivery to the Smith's grocery store in Chubbuck. Right after the call, the Lincoln Navigator left the Petco and went directly to the Smith's. Once there, officers conducted a traffic stop. Stedfeldt was in the vehicle. The officers placed a call to the number Groth provided for "Kelly," and Stedfeldt's phone rang. The officers seized cash and Stedfeldt's phone.

The Vezina operation was next. Groth placed a recorded phone call to Vezina to set up the delivery. Groth suggested that the delivery location be the Petco in Chubbuck, but Vezina insisted on the Smith's in Chubbuck—the same place where Stedfeldt was stopped. Vezina said he would bring $2,000 and would be driving a white Subaru. He also told Groth that he lived off Chubbuck Road. Surveilling officers drove around the area surrounding Smith's and Chubbuck Road, and they saw Vezina walk out of a residence on Branson Drive, a road directly off Chubbuck Road, approximately a half mile from the Smith's. They watched as Vezina got into a white Subaru Legacy and drove toward the Smith's.

At the Smith's, Trooper Braswell was waiting for Vezina to arrive. Trooper Braswell had a description of Vezina's vehicle and its license plate number. When the vehicle came into the parking lot, Trooper Braswell conducted a traffic stop. As directed by Detective Edgley, Trooper Braswell told Vezina a fictious reason for the stop—that the stop was for a suspected DUI.

Vezina exited the vehicle, and Trooper Braswell did a pat down search of Vezina's

person. During the pat down, Trooper Braswell discovered a Leatherman knife, which was not seized, and a wad of cash.[3]  Upon feeling the cash in Vezina's left front pocket, Trooper Braswell asked Vezina what it was, and Vezina told him it was money. Trooper Braswell then asked how much money, and Vezina told him it was $2,000—the same amount Vezina told Groth he was going to bring for the drug transaction. Trooper Braswell then removed the cash from Vezina's pocket and seized it as evidence.

Additionally, Trooper Braswell directed another officer who had a K9 unit to conduct a free air sniff around Vezina's vehicle. The K9 unit alerted, so the officers then searched the vehicle. A backpack on the back seat contained a digital scale and plastic baggies. The officers seized this evidence as well.

The officers also placed a call to the number Groth provided for "Leo," and Vezina's phone rang. They then seized his phone. Vezina now asks the Court to suppress the evidence from this traffic stop, including the phone, scale, baggies, and $2,000 cash.[4]

### III. LEGAL STANDARD

While "[t]he Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands," *United States v. Leon*, 468 U.S. 897, 906 (1984), the exclusionary rule is "a judicially created remedy designed to safeguard

---

[3] Much to do is made in the written motions to suppress about whether Trooper Braswell could recognize the Leatherman as a weapon or contraband by feel alone. But that is irrelevant because the Leatherman was not seized as evidence, nor did it lead to another search or seizure.

[4] After the Vezina operation, the officers moved on to Martinez. Again, they had Groth set up a delivery. They arranged to meet at the Albertson's in Idaho Falls, and then they moved the location to the Walmart in Idaho Falls. Martinez provided a description of his vehicle. Officers stopped Martinez in the Walmart parking lot and seized cash, methamphetamine, and two handguns.

Fourth Amendment rights generally through its deterrent effect," *United States v. Calandra*, 414 U.S. 338, 348 (1974). Under the exclusionary rule, "illegally seized evidence" cannot be used "against the search victim in a criminal trial." *Id.* at 350.

When a defendant challenges a warrantless search or seizure, the government bears the burden of establishing by a preponderance of evidence that the search or seizure did not violate the Fourth Amendment. *United States v. Carbajal*, 956 F.2d 924, 930 (9th Cir. 1992); *United States v. Johnson*, 936 F.2d 1082, 1084 (9th Cir. 1991); *see also United States v. Jeffers*, 342 U.S. 48, 51 (1951).

## IV. ANALYSIS

Vezina challenges the initial stop of his vehicle, the search of his person, and the search of the vehicle. He requests suppression of the evidence recovered from the stop and those searches, specifically the phone, scale, baggies, and $2,000 cash.

### A. Traffic Stop

Under the Fourth Amendment, government officials may conduct an investigatory stop of a vehicle only if they possess "reasonable suspicion: a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Thomas*, 211 F.3d 1186, 1189 (9th Cir. 2000) (cleaned up). Reasonable suspicion "requires specific, articulable facts which, together with objective and reasonable inferences, form a basis for suspecting that a particular person is engaged in criminal conduct." *Id.* (cleaned up).

In other words, whether such a stop is reasonable under the Fourth Amendment, depends on the totality of the circumstances. *Navarette v. California*, 572 U.S. 393, 397

(2014). Reasonable suspicion is more than "a mere hunch" but "considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Id.* (cleaned up). Law enforcement officers have reasonable suspicion when they have "a particularized and objective basis for suspecting the particular person" is breaking the law. *Id.* at 396 (cleaned up).

Here, law enforcement officers had reasonable suspicion sufficient to stop Vezina's vehicle. Groth had told them that he was to deliver drugs to "Leo," and using the phone number Groth had for Leo, the officers were able to confirm that "Leo" was Leo Vezina. They showed Groth photos of Vezina, and Groth confirmed that Vezina was the intended buyer. Groth also told the officers about Stedfeldt and Martinez. Indeed, before stopping Vezina, the officers had Groth arrange a delivery location with Stedfeldt, and they were able to stop Stedfeldt at the arranged delivery location and time—further confirming Groth's story about the drug operation. Groth set up a delivery with Vezina as well. Vezina told Groth in a recorded phone call what car Vezina would be driving to the delivery. Vezina also told Groth where he lived, and officers were then able to find Vezina in that vicinity, watch him get into a car that matched the description given to Groth, and drive to the delivery location. When Vezina arrived at the delivery location, the officers had reasonable suspicion that Vezina was there to purchase one pound of methamphetamine, so Trooper Braswell lawfully stopped Vezina's vehicle.[5]

---

[5] Vezina argues that this reasonable suspicion was undercut by Trooper Braswell's "ruse" in telling Vezina that he was stopped for a suspected DUI. To be clear, this was not a pretextual stop. No officer had any reason to suspect a DUI, and in no way did Trooper Braswell rely on that fictious reason to stop Vezina.

(Continued)

## B. *Terry* Search

Once Vezina stepped out of the vehicle, Trooper Braswell conducted a pat down search of Vezina. This type of search is often called a "*Terry* search" or a "*Terry* frisk." *E.g.*, *Minnesota v. Dickerson*, 508 U.S. 366, 374 (1993); *United States v. I.E.V.*, 705 F.3d 430, 438 (9th Cir. 2012); *Thomas v. Dillard*, 818 F.3d 864, 887 (9th Cir. 2016).

In *Terry*, the Supreme Court held that "[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous," the officer may conduct a pat-down search "to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." *Terry v. Ohio*, 392 U.S. 1, 24 (1968). It is reasonable for officers to believe that someone reasonably suspected to be "involved in narcotics activity" may be armed. *United States v. Davis*, 530 F.3d 1069, 1083 (9th Cir. 2008); *see also United States v. $109,179 in U.S. Currency*, 228 F.3d 1080, 1086 (2000) ("Because the police reasonably suspected Maggio of dealing in narcotics, it was not unreasonable to believe that he might be armed."); *U.S. v. Thomis*, 2006 WL 2039971, at *4 (D. Nev. July 20, 2006) ("[A]n officer's reasonable suspicion that a suspect is engaged in drug trafficking also provides reasonable

---

Rather, Trooper Braswell told Vezina this story to deceive Vezina about the true and only reason for the stop. "It has long been recognized that law enforcement may use deceit in certain circumstances." *United States v. Ramirez*, 976 F.3d 946, 952 (9th Cir. 2020) (citing *Sorrells v. United States*, 287 U.S. 435, 441 (1932)). However, a ruse that "mispresents the purpose of [the] investigation so that the officers can evade limitations on their authority raises serious Fourth Amendment concerns." *Id.* at 955. But here, law enforcement did not in any way rely on the ruse to conduct this stop or the searches that followed. Law enforcement stopped Vezina because they had reasonable suspicion that Vezina was attempting to buy methamphetamine. Trooper Braswell told Vezina a fictitious reason for the stop, but that was only to conceal the ongoing investigation of this drug trafficking organization. It was reasonable for Trooper Braswell to do so.

suspicion that the person may be armed and dangerous because drug traffickers are frequently armed."). If during a lawful *Terry* search the officer "feels an object whose contour or mass makes its identity immediately apparent" as contraband or evidence, the officer may seize the object without a warrant. *Dickerson*, 508 U.S. at 375–76.

Here, Trooper Braswell had reasonable suspicion that Vezina was involved in trafficking methamphetamine. From his experience as a law enforcement officer, Trooper Braswell reasonably suspected that Vezina might be armed because Vezina was involved in drug activity. Thus, Trooper Braswell conducted a lawful *Terry* search of Vezina's person for weapons.

During that search, Trooper Braswell felt a wad of cash in Vezina's pocket. Trooper Braswell was able to recognize the object as a wad of cash just from feeling it. He then asked Vezina what it was, and Vezina confirmed it was $2,000 cash. Because Vezina had told Groth he was bringing $2,000 for the drug transaction, Trooper Braswell determined that the cash was evidence, and he lawfully seized the cash.

### C. Vehicle Search

While the vehicle was stopped and Trooper Braswell was talking to Vezina, another officer had a K9 unit conduct a free air sniff around the vehicle. The K9 unit alerted, and the officers then searched the vehicle where they discovered the backpack with the scale and baggies.

Under the "vehicle exception" to the warrant requirement, government officials may validly search a defendant's vehicle without first obtaining a warrant, if the search is supported by probable cause. *United States v. Ross*, 456 U.S. 798, 820–21 (1982); *United*

*States v. Fowlkes*, 804 F.3d 954, 971 (9th Cir. 2015). "Probable cause exists when police officers have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *United States v. Wallace*, 213 F.3d 1216, 1219 (9th Cir. 2000) (cleaned up). Even the mere odor of illegal drugs emanating from a vehicle creates sufficient probable cause to justify a warrantless search of the vehicle. *United States v. Barron*, 472 F.2d 1215, 1217 (9th Cir. 1973).

Here, the officers had probable cause to search the vehicle. Not only did the officers have all of the information Groth provided and the circumstances leading up to the stop, but they also had the K9 unit's alert on the vehicle. The officers had probable cause to believe that Vezina was involved in trafficking methamphetamine, and they lawfully searched Vezina's vehicle.

## V. CONCLUSION

Law enforcement did not violate the Fourth Amendment in stopping Vezina's vehicle, searching his person, or searching his vehicle. Law enforcement lawfully seized the phone, scale, baggies, and $2,000 cash. Therefore, the Court DENIES the consolidated Motion to Suppress (Dkts. 60, 82).

///

///

///

///

///

///

MEMORANDUM DECISION AND ORDER - 10

## VI. ORDER

THE COURT HEREBY ORDERS:

1. Defendant's Motion for Leave to File Reply (Dkt. 69) is GRANTED. Accordingly,

    Defendant's Reply (Dkt. 71) is accepted as timely.

2. Defendant's Motion to Suppress (Dkt. 60) is DENIED.

3. Defendant's Second Motion to Suppress (Dkt. 82) is DENIED.

DATED: July 22, 2022

David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 11