UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LEO ANSEN VEZINA,<br><br>Defendant. | Case No. 4:21-cr-00035-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court are several motions filed by Defendant Leo Ansen Vezina. The matters are now ripe for the Court's review.

In preparation for a prior trial setting, Vezina filed a Motion in Limine to Preclude Testimony (Dkt. 122) and a Motion to Compel Discovery (Dkt. 132). He later filed a Motion to Dismiss the Indictment for Vindictive Prosecution (Dkt. 143) and a Motion for Return of Property (Dkt. 149)—which he later renewed (Dkt. 178).[1]

Upon review, and for the reasons below, the Court will DENY the Motion in Limine, GRANT in PART and DENY in PART the Motion to Compel, DENY the Motion to Dismiss for Vindictive Prosecution, and DENY both Motions for Return of Property.

---

[1] Each of these motions, except for the Renewed Motion for Return of Property (Dkt. 178), were filed by Vezina's third attorney, Richard Hearn. Vezina is now on his fifth attorney.

MEMORANDUM DECISION AND ORDER - 1

## II. BACKGROUND

On September 29, 2020, Idaho State Police Corporal Scheierman stopped a silver Kia Forte traveling on Interstate 86 near mile marker 56 in Bannock County, Idaho, after observing two traffic violations.

Scheierman identified the driver of the vehicle as Brett Groth. A search of the vehicle—and of Groth's person—yielded five plastic bags containing methamphetamine with a gross weight of about 2,250 grams, packing materials, a broken meth pipe, a drug ledger, and approximately $4,250 in cash.

In a subsequent interview with detectives, Groth said he had been trafficking methamphetamine and had made several trips between Idaho and California transporting drugs. Groth informed law enforcement that on this trip he intended to deliver methamphetamine to three individuals. Each was named in the drug ledger and listed as a contact in his phone. Groth informed detectives that the three individuals were "Kelly," "Leo," and "Jacob." He gave physical descriptions and phone numbers for each individual.

Relevant here, Groth described the person he knew as "Leo" to be a white male in his 40s with brown hair and the phone number (208) 223-4496. Groth said "Leo" was identified as "Poc 2" on the drug ledger and that he owed Groth $4,450.00 for previous drug buys. Groth said he was going to deliver one pound of methamphetamine to Leo at the Fort Hall Casino. Law enforcement used internal records databases to verify that the phone number was registered to Leo Vezina. Groth identified photographs of Vezina as "Leo" after law enforcement presented him with photos of Vezina from the DMV and Facebook. Detectives verified the physical description Groth gave of Leo Vezina as

being accurate.

While speaking with detectives, Groth placed recorded phone calls to each of the three individuals, including Vezina. Following instructions from detectives, Groth made two recorded phone calls to Vezina at phone number (208) 223-4496. Groth and Vezina agreed to meet later that day at the Fort Hall Casino. About two hours later, Groth placed another recorded call to Vezina during which the location of their meeting was changed to the parking lot of Smith's grocery store in Chubbuck, Idaho.

During the recorded phone conversations, Vezina stated that he would be driving a "white Subaru," that he lived off Chubbuck Road, and that he would be bringing "two g's." Law enforcement believed "two g's" to mean a $2,000 cash payment toward Vezina's outstanding drug debt.

At around 5:45 p.m. DEA Special Agent Dan Riley identified Leo Vezina loading items into a white Subaru Legacy parked in front of 4716 Branson Drive in Chubbuck, Idaho. This sighting was consistent with Vezina's statement on the phone that he lived off Chubbuck Road. The white Subaru was also consistent with the description Vezina had provided in the recorded phone call. Agent Riley followed Vezina as he drove from his home into the parking lot of Smith's. At around 5:52, Idaho State Police Trooper Braswell pulled Vezina over as part of the ongoing drug investigation.

Braswell informed Vezina that he was stopping him based on a tip that he had been drinking and driving. Braswell asked Vezina to exit his vehicle and produce his driver's license. Vezina complied. Law enforcement then immediately conducted a K9 "sniff" of the Subaru and contemporaneous pat down on Vezina for weapons. They discovered a

Leatherman multitool in one of Vezina's pockets and felt what appeared to be a large amount of cash in another pocket. Law enforcement asked Vezina what was in that pocket, and he told them it was $2,000.00 in cash. Law enforcement then removed and seized the money.

After an alert by the K9 officer, law enforcement searched Vezina's Subaru and seized a backpack containing clothes, a digital scale, and several empty bindle baggies. Law enforcement also seized Vezina's Motorola cellphone from his person. Detective Edgley used Groth's phone to dial the phone number attributed to Vezina in the drug ledger and observed that the Motorola cellphone just taken from Vezina began ringing.

On February 11, 2021, A grand jury returned a five-count indictment against Vezina (and others) alleging multiple drug charges. Dkt. 1. A superseding indictment followed in July of 2022. Dkt. 130. Vezina is now charged with one count of Conspiracy to Distribute Methamphetamine and one count of Attempted Possession with Intent to Distribute Methamphetamine. *Id*.

The Court turns next to the pending motions.

### III. ANALYSIS

**A. Motion in Limine (Dkt. 122)**

*1. Background*

On July 6, 2022, Vezina filed a Motion in Limine to Preclude Testimony. Dkt. 122. In this Motion, Vezina asks that the Court preclude the Government from eliciting testimony from codefendant Groth regarding Vezina's intent to possess or distribute methamphetamine.

He essentially alleges that, absent Groth's statement that he (Groth) was supposed to deliver drugs to Vezina, there would be nothing connecting Vezina to the methamphetamine found in Groth's car. Vezina assumes Groth will take a plea deal and testify against him and so argues that Groth's testimony must meet the requirements of Federal Rule of Evidence 602. *See generally id*. He assumes these requirements cannot be met and asks the Court to preclude the testimony altogether. The Government opposes the Motion. Dkt. 125.

2. *Legal Standard*

"Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *Miller v. Lemhi Cty.*, No. 4:15-cv-00156-DCN, 2018 WL 1144970, at *1 (D. Idaho Mar. 2, 2018) (citing *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002)). "The term 'in limine' means 'at the outset.' A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009) (quoting Black's Law Dictionary 803 (8th ed. 2004)).

Because "[a]n in limine order precluding the admission of evidence or testimony is an evidentiary ruling," *United States v. Komisaruk*, 885 F.2d 490, 493 (9th Cir. 1989) (cleaned up), "a district court has discretion in ruling on a motion in limine," *United States v. Ravel*, 930 F.2d 721, 726 (9th Cir. 1991). Further, in limine rulings are preliminary and so "are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

*3. Discussion*

Federal Rule of Evidence 602 requires the introduction of sufficient evidence to support a finding that any witness testifying at trial—except a Rule 703 expert—has "personal knowledge" of the matter he or she will testify about. Fed. R. Evid. 602. Absent "personal knowledge," Rules 801(c) and 802 prohibit "hearsay" statements; that is statements made by an out-of-court declarant to prove the truth of the matter being asserted by the witness.

Vezina argues that Groth's statements to investigators that he (Groth) was "supposed" to deliver certain drug quantities to certain individuals are insufficient to prove any of the intent-based crimes Vezina is charged with (i.e., "possession with intent to distribute methamphetamine") because he (Vezina) was not charged with any conspiracy related crimes.

Vezina filed his brief on July 6, 2022. The Government filed its response in opposition on July 20, 2022. Dkt. 125. In it, the Government argues that statements by coconspirators made in furtherance of a conspiracy are not hearsay and may be used against charged conspirators. *See generally* Dkt. 125, at 5–8. The Government contends that Groth's testimony falls within Federal Rule of Evidence 801(d)(2)(E), which provides that statements made "by [a] party's coconspirator during and in furtherance of the conspiracy" are not hearsay.

On July 25, 2023, Vezina filed his reply. Dkt. 128. In it, he concedes that the Government's caselaw is accurate, but states that Groth's testimony should, nevertheless,

be excluded unless the "Government makes the necessary showing of a conspiracy." *Id*. at 2.

The next day, a grand jury returned a superseding indictment charging Vezina with one count of Conspiracy to Distribute Methamphetamine and one count of Attempted Possession with Intent to Distribute Methamphetamine. *Id*.

Thus, to the extent Vezina's Motion was based on the lack of a conspiracy charge, circumstances have now changed. If Vezina still believes Groth's testimony is inadmissible, he may so move before trial. But as a preliminary matter, the Court finds Groth's testimony to be relevant and admissible—particularly considering the Superseding Indictment. Assuming the Government can make a showing of a conspiracy, Groth's testimony will be admissible under Rule 801(d)(2)(E).

Thus, the Motion in Limine is DENIED.

**B. Motion to Compel Discovery (Dkt. 132)**

*1. Background*

On July 27, 2022, Vezina filed this motion asking the Court to compel the Government to "produce for inspection and copying" five items or topic areas. These include: (1) Vezina's cellphone, (2) forensic information obtained from codefendant Groth, (3) all writing added to the ledger by Idaho State Police Detective Edgley, (4) any photographs showing when Groth allegedly identified Vezina, and (5) any writing in the Government's possession believed to be that of Groth. The Court will address each area in turn.

2. *Legal Standard*

The instant motion is governed by Federal Rule of Criminal Procedure 16, which dictates what the Government must produce upon request:

> (E) *Documents and Objects*. Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
> (i) the item is material to preparing the defense;
> (ii) the government intends to use the item in its case-in-chief at trial; or
> (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(A)(1)(E). The Government is also bound by *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. U.S.*, 405 U.S. 150 (1972), which require the disclosure of material exculpatory information.

3. *Discussion*

   a. <u>Cellphone</u>

Vezina asserts that because Groth identified him, in part, by calls and texts, evidence of prior communications—or lack thereof—could be material to his defense. Accordingly, Vezina asks that the Government return his cellphone to him for review.

In response, the Government notes that it is in possession of two cellphones belonging to Vezina. It explains, however, that both are locked and cannot be opened without passwords or biometrics. The Government offers to do a forensic examination of the phones if Vezina will provide the passwords.

MEMORANDUM DECISION AND ORDER - 8

In reply, Vezina asserts that the Government's "deal" is a non-starter because he has a right to anything that "may be relevant to developing a possible defense" whether the Government gets access to it or not. Dkt. 148, at 2 n.2 (citing *United States v. Galecki*, 2018 U.S. Dist. LEXIS 11299 \*\* 6-7 (D. Nev. July 6, 2018) and *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013)). He asserts that the Government must turn the phones over immediately.

To begin, this is an open investigation. As will be explained below, the Government need not return (i.e., turn over) either physical cellphone. But that conclusion does not answer the more immediate question of whether it needs to turn over information contained *on* the cellphone.

Here, the Court finds Vezina has not made a "threshold showing of materiality, which requires a presentation of facts which would tend to show that the Government is in possession of information helpful to the defense." *United States v. Stever,* 603 F.3d 747, 752 (9th Cir. 2010). Because the Government did not respond to his materiality argument, Vezina argues that "the materiality of the information . . . is not in dispute." Dkt. 148, at 2. But the absence of a counter argument does not automatically mean Vezina has met his burden. He has not provided the Court with any facts illustrating that the cellphone contains what he thinks it contains. He simply says that "evidence of prior communications . . . or lack thereof—would be material." Dkt. 132-1, at 3–4. That is not enough evidence to support a finding of materiality. Speculating that there is evidence—even exculpatory evidence—is not the same as "presenting" facts that would tend to show the Government is in "possession" of relevant and material information.

MEMORANDUM DECISION AND ORDER - 9

Finally, Vezina's argument is circular. The Government's obligation is to disclose anything that might be relevant to Vezina's defense. As just noted, the Government (like the Court) does not know if there is anything on either cellphone that would fall under that umbrella because it cannot access the information without Vezina's permission or a search warrant. Thus, it has—technically speaking—met its obligation: it has turned over what it has: nothing. But it appears the parties are at a stalemate waiting for the other to act. The information could be helpful (or harmful) to both sides. But if Vezina will not open the phones of his own volition, and the Government will not get a search warrant, the status quo will not change. The Court will not tell the Government how to prosecute its case. That said, the Government will not be allowed to use anything from the cellphone if Vezina was not provided an opportunity to examine the evidence fairly. Additionally, the Government must continue to comply with its *Brady* and *Giglio* obligations.[2]

The Court will not grant the motion at this time because there is, frankly, nothing to grant. The Government need not turn over the physical cellphone because this is an ongoing investigation, and it need not turn over anything from the cellphone because it is not in possession of anything from the cellphone. Unless that situation changes, this request is DENIED.

b. <u>Forensic information from Groth</u>

Related to the above, Vezina seeks any information obtained by the Government

---

[2] As the Court will explain later when discussing Vezina's Motion for Return of Property, whether the Government is "in possession" of the contents of an unopened cellphone is an unsettled area of law. Suffice it to say, the Court does not find the Government "possesses" the unopened (and unknown) contents of Vezina's cellphones to the extent it must turn them over.

*from Groth's cellphone*, arguing that any communications between the two—or the lack thereof—could be material to his defense.

The Government explains that Groth's phone was not examined and was returned to him after his interactions with law enforcement. Vezina finds this difficult to believe, considering that Groth was found in possession of large drug quantities and was integral to the drug-dealing operation.

Astonishing or not, the Court sees no reason to doubt the truth of the Government's statement. If there is no information to turn over, so be it. Nevertheless, to the extent there are any communications or other forensic information gleaned from Groth applicable to Vezina, it should be turned over consistent with *Brady* and *Giglio*.

This request is DENIED.

c. <u>Edgley writing</u>

As noted in the factual background, the drug ledger in this case is a critical piece of evidence. It contains names, amounts owed, and drug quantities. Unfortunately, Detective Edgley failed to timely enter the ledger into evidence. In fact, he mistakenly used the ledger as his own for many months; taking case notes and otherwise writing in the book. After discovering the error, Edgley purportedly removed the pages he had written on.

Vezina has two problems with what occurred. First, he would like some type of statement from Groth about the contents of the ledger and whether the current version (with the removed pages) is an accurate representation of what the ledger was like when it was seized by law enforcement. Whether to obtain such a statement is up to the Government.

Vezina's second concern is that he has no way of knowing what Edgley removed

without looking at it. The Government contends Vezina can look at it, but he cannot copy or reproduce any of it because it is confidential, related to other investigations, or wholly irrelevant. Vezina rejects this offer because he wants to compare Edgley's handwriting from the removed pages to the handwriting in the ledger.[3] The Court recognizes that the information is confidential and irrelevant to this case, but Vezina should be given a fair opportunity to compare samples of Edgley's handwriting from the removed pages with the ledger as it now exists. The Government need not turn over *every* page, but it should turn over a sufficient number of pages *with appropriate redactions* so that Vezina can make a meaningful comparison.[4]

This request is GRANTED in PART and DENIED in PART as outlined above.

d. Photographs shown to Groth

Vezina would like any and all photos shown to Groth by Detective Edgley.

In response, the Government states that it will provide Vezina with the specific DMV photograph of him that was shown to Groth by law enforcement. It also posits that a Facebook photo was shown to Groth on the fly and no record was kept of that photograph.

In reply, Vezina states that this response is satisfactory.

---

[3] The implication being that Edgley may have written in the ledger *after* it was seized from Groth. Vezina has no evidence to support this suspicion, but the Court recognizes that there is a problem here with the chain of custody. Giving Vezina the opportunity to perform such a comparison could alleviate concerns in the future.

[4] In other words, if there are one to two pages that have generic notes about an investigation (or other situation) that would require limited redactions, such is likely sufficient. If, on the other hand, heavy redactions or every page will be necessary, more pages will likely be needed to perform an accurate comparison.

e.  <u>Writings of Groth</u>

Finally—and related to the above issue about Edgley writing in the ledger—Vezina seeks a writing sample, or "any writing" from Groth so that he can compare the handwriting in the ledger. The Government's response is that the only writing in its possession produced by Groth is the drug ledger. In reply, Vezina states that this response is satisfactory. Furthermore, to the extent the Court has granted the above request as it relates to Edgley, Vezina will be able to compare the two individuals' handwriting.

4. *Summary*

The Government need not turn over either of Vezina's physical cellphones at this time. But to the extent it intends to use anything from those cellphones it must comply with its discovery obligations. The Government must turn over *portions* of Edgley's notes for a meaningful handwriting comparison.

All other requests are denied or otherwise moot (in light of the response/replies).

The Motion is GRANTED in PART and DENIED in PART as outlined above.

**C. Motion to Dismiss for Vindictive Prosecution (Dkt. 143)**

1. *Introduction*

As noted, the original indictment here was filed on February 11, 2021, and contained five counts. Counts one through four related to drug possession; count five was a firearm charge. On July 26, 2022, a grand jury returned a superseding indictment charging Vezina with two counts: Conspiracy to Distribute Methamphetamine and Attempted Possession with Intent to Distribute Methamphetamine. Dkt. 130.

On August 22, 2022, Vezina moved to Dismiss for Vindictive Prosecution. Dkt.

MEMORANDUM DECISION AND ORDER - 13

143. The Government opposed the Motion. Dkt. 150. Vezina replied. Dkt. 156.

   2. *Legal Standard*

"A prosecutor violates due process when he seeks additional charges solely to punish a defendant for exercising a constitutional or statutory right." *United States v. Gamez-Orduno*, 235 F.3d 453, 462 (9th Cir. 2000) (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)).

During pretrial proceedings, however—where plea negotiations are continuing—vindictiveness claims are evaluated differently. *Gamez-Orduno*, 235 F.3d at 462 (citing *United States v. Goodwin*, 457 U.S. 368, 380–81 (1982)). In the context of pretrial plea negotiations, "vindictiveness will not be presumed simply from the fact that a more severe charge followed on, or even resulted from, the defendant's exercise of a right." *Id*. There is no due process violation when the government "carries out a threat made during plea negotiations to reindict the accused on more serious charges if he does not plead guilty to the offense with which he was originally charged." *Bordenkircher*, 434 U.S. at 358.

The Court in *Gamez-Orduno* explained the rationale why the standard is different:

> The reason that we do not presume vindictiveness in the pretrial plea-bargaining situation flows from the courts' sanctioning of plea negotiations as a means of resolving criminal cases. The Supreme Court, and this court, have recognized that prosecutors will often, as a plea negotiation tactic, threaten increased charges during the course of plea negotiations, and later, if no guilty plea is forthcoming, make good on that threat. Recognizing that such prosecutorial conduct is not meaningfully distinguishable from charging more strictly at the outset and then reducing the charges as a result of plea negotiations, the courts have concluded that threatening and then filing more severe charges as an outgrowth of plea negotiations does not violate due process.

MEMORANDUM DECISION AND ORDER - 14

235 F.3d at 462–63. Furthermore, even in pretrial situations that do not involve explicit plea negotiations, "prosecutors may add charges pretrial for any number of permissible reasons, such as coming to a new understanding of the crime or evidence." *United States v. Kent*, 649 F.3d 906, 913 (9th Cir. 2011). "A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct." *Goodwin*, 457 U.S. at 382.

3. *Discussion*

Vezina argues that the Government filed the Superseding Indictment in this case "to penalize Vezina for having filed numerous pretrial motions . . . and to deter Vezina and [others] from filing such pretrial motions in the future." Dkt. 143-1, at 2. He argues that there is, at a minimum, an "appearance of vindictiveness." The Court disagrees.

To begin, plea negotiations were ongoing at the time the Superseding Indictment was filed in this case. The Government explains that it informed Vezina it intended to seek a charge for conspiracy during discovery but offered him the opportunity to plead to the charges from the original indictment. Vezina rejected that offer. The Government then made good on its promise. None of these actions were inappropriate. *See Bordenkircher*, 434 U.S. at 358

Vezina objects to this recitation of the facts, alleging that the timeline belies the Government's argument. The Government made the above offer to Vezina at some point in the summer of 2022 (the Court has not been informed of the exact date). On July 21, 2022, Vezina's Counsel emailed the Government explaining that after "extensive

MEMORANDUM DECISION AND ORDER - 15

discussions" Vezina had decided to "reject[] the proposed plea." Dkt. 150-1. Five days later, the Government filed the Superseding indictment. Vezina alleges the Government cannot hide behind the argument that it superseded him during the pretrial bargaining phase because plea negotiations were not "ongoing." According to Vezina, negotiations ended when he rejected the offer on July 21. The Court finds this reading of the caselaw to be tenuous at best.

While it may be clear in some cases that negotiations have passed the point of no return, the undersigned has seen instances where a Defendant who had "firmly" rejected an offer had a change of heart, returned to the Government, and accepted the offer. It is difficult to say here that negotiations were "over" just because Vezina rejected the most recent proposal. It is also unclear, under Vezina's interpretation, how much time after an offer was rejected would still count as "during plea negotiations"—if any at all. Grand juries are not held every day. If a party rejects a plea offer, and the Government has to wait one, two, or three weeks until a grand jury is empaneled, is it then prohibited from bringing new charges because the plea negotiation phase is "over?"[5] Here, the fact that five days elapsed from the date Vezina rejected the Government's offer to the date it filed a superseding indictment does not negate the fact that plea negotiations were "ongoing." Even if it could be said that Vezina was "done" negotiating, how does he know the Government was not going to come back with another offer later? Vezina has an uphill

---

[5] Or, even less likely, is Vezina implying that the Government must seek a superseding indictment literally "during" plea negotiations? It would not make logical, or organizational, sense to offer one agreement that hinged on certain factors (and charges) and simultaneously seek a superseding indictment that (likely) changes some of those factors (and charges) while the first was still under consideration.

MEMORANDUM DECISION AND ORDER - 16

battle arguing negotiations were truly "done." The Court will not make that climb.

But even assuming *arguendo* that there was some problem with the Government's timing as it relates to plea negotiations, the Government was within its rights to add new charges for any number of reasons such as "coming to a new understanding of the crime or evidence." *Kent*, 649 F.3d at 913. The fact that, after discovery, the Government determined it could proceed with a conspiracy charge is not indicative of vindictiveness, but of a thorough investigation. In fact, Vezina's Motion in Limine discussed this very issue—under which conditions (or charges) Groth's testimony would be relevant.[6]

In sum, the events leading up to the Superseding Indictment—including the overall timing of the indictment itself—does not "indicate" any type of vindictiveness. Furthermore, there is no suggestion that Vezina's numerous motions pushed the Government to make the determination either. Vezina has not carried his burden. Thus, the Motion to Dismiss is DENIED.

**D. Motion to Return Property (Dkt. 149)**

*1. Background*

In addition to the above discovery motion dealing with his cellphones, Vezina filed the instant Motion to Return Property on August 31, 2022. Dkt. 149. In it, Vezina again postures that the contents of his phone *may* be useful to his defense. He argues that the call history, texts, and contacts in his phones could be used to impeach coconspirators who

---

[6] The Court is not implying Vezina's Motion "tipped off" the Government or pushed them to amend the indictment, but even if it did, such would not violate Vezina's rights. The evolving nature of litigation lends itself to charges being amended as both sides' theory of the case develops.

MEMORANDUM DECISION AND ORDER - 17

claim to have spoken with him. He also suggests the phone *may* contain GPS evidence of his location at times relevant to the charged conduct.

The Government sought various extensions of time to respond. Dkts. 159, 168. It also sought a stay (Dkt. 173)—to avoid continually asking for extensions—because Vezina was assigned new counsel during the pendency of the Motion. The Court granted the same (Dkt. 174) and Vezina's new counsel renewed the Motion a short time later. Dkt. 178. Ultimately, the Government responded in opposition to the request. Dkt. 180. Vezina did not reply.

2. Legal Standard

Federal Rule of Criminal Procedure 41(g) permits "[a] person aggrieved by an unlawful search and seizure or by the deprivation of property [to] move the district court . . . for the return of the property on the ground that such person is entitled to lawful possession of the property." *United States v. Mills*, 991 F.2d 609, 612 (9th Cir. 1993). A defendant has a right to reclaim his property when it is "no longer needed as evidence." *Id*.

Generally, a Rule 41(g) motion is properly denied "if the defendant is not entitled to lawful possession of the seized property, the property is contraband or subject to forfeiture or the government's need for the property as evidence continues." *United States v. Van Cauwenberghe*, 934 F.2d 1048, 1061 (9th Cir. 1991).

3. Discussion

To begin, as the Court discussed above, Vezina's supposition that the phones *may* contain helpful evidence is not sufficient to justify their return.

Second, the evidence at issue—including the cellphone—was properly seized. As the Court noted in its decision on Vezina's Motion to Suppress: "Law enforcement did not violate the Fourth Amendment in stopping Vezina's vehicle, searching his person, or searching his vehicle. Law enforcement lawfully seized *the phone*, scale, baggies, and $2,000 cash." Dkt. 127, at 10 (emphasis added).

Finally, Vezina's cellphone is still evidence. The Government states that in fully intends to introduce the cellphone into evidence at trial to establish that it was the cellphone that rang when Groth called the person he believed he was meeting with to sell drugs (Vezina).

As such, the Government need not return Vezina's cellphone at this time.

## V. CONCLUSION

With one exception, Vezina has failed to carry the requisite burden to receive the remedies he seeks through his various motions. That exception is his Motion to Compel Discovery, which the Court will GRANT in part. Otherwise, the Court will DENY Vezina's motions discussed above.

## VI. ORDER

1. Vezina's Motion in Limine to Preclude Testimony (Dkt. 122) is DENIED.

2. Vezina's Motion to Compel Discovery (Dkt. 132) is GRANTED in PART and DENIED in PART as outlined above. The Government must provide *some pages (*(with appropriate redactions) from Edgley's writings so that Vezina can undertake a handwriting comparison.

3. Vezina's Motion to Dismiss the Indictment for Vindictive Prosecution (Dkt. 143) is DENIED.

4. Vezina's Motion for Return of Property (Dkt. 149)—which was later renewed (Dkt. 178)—is DENIED.

DATED: March 7, 2023

_____
David C. Nye
Chief U.S. District Court Judge